UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Todd A. Moats,                        Case No. 3:20-cv-265

       Plaintiff

    v.                                     MEMORANDUM OPINION
                                                 AND ORDER

Commissioner of Social Security,

       Defendant

## I. INTRODUCTION

Before me is the Report & Recommendation (R & R) of Magistrate Judge Kathleen B. Burke. (Doc. No. 18). Judge Burke recommends I affirm the final decision of the Defendant Commissioner of Social Security, denying Plaintiff Todd A. Moats's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (*Id.*). Moats timely filed objections to the R & R, (Doc. No. 19), and the Commissioner responded. (Doc. No. 20).

## II. BACKGROUND

After reviewing the R & R, and hearing no objection to these sections by Moats, I hereby incorporate and adopt, in full, the "Procedural History" and "Evidence" sections set forth in the R & R. (Doc. No. 18 at 1-17).

## III. STANDARD

A district court must conduct a *de novo* review of "any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The district judge "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)); *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) ("Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## IV.  DISCUSSION

Although Moats repeats verbatim large sections of his briefing before Judge Burke in his objections to the R & R, his true objections to Judge Burke's R & R relate to Judge Burke's findings that the ALJ satisfied his duty to ensure Moats had a full and fair hearing. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir 1983) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).

**A.  Heightened Duty**

Moats first objects to Judge Burke's finding that the ALJ did not have a heightened duty to develop the record. Contrary to Moats's assertion, I find Judge Burke correctly stated the standard for determining when an ALJ has a heightened duty to develop the record. That is,

> An ALJ has a special, heightened duty to develop the record under special circumstances, such as "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with the hearing procedures[.]" *Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008) (citing *Lashley*[ *v. Sec'y of Health & Human Servs.*], 708 F.2d [1048,] 1051-1052). However, "the mere fact that a claimant was unrepresented is not grounds for reversal." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). And, "[t]here is no bright line test for determining when the administrative law judge has assumed the role of

2

> counsel or failed to fully develop the record." *Lashley*, 708 F.2d at 1052. A court must make the determination on a case-by-case basis. *Id.*

(Doc. No. 18 at 22).

Applying this standard, Judge Burke concluded Moats had not established the ALJ had a heightened duty here, even though he was unrepresented. In so reasoning, Judge Burke explained:

> the record reflects that Moats was fully aware of his right to proceed with representation and was even provided an opportunity to postpone the hearing to obtain counsel. Having been provided with information regarding his right to representation, Moats made the decision to proceed without representation. Furthermore, "the mere fact that a claimant was unrepresented is not grounds for reversal." *Duncan*, 801 F.2d at 856. Additionally, the record does not reflect that Moats was incapable of presenting an effective case or that he was unfamiliar with the hearing procedures.

(*Id.* at 26-27).

Moats interpreted this explanation to mean Judge Burke concluded Moats was not "without counsel" because he was advised of his right to representation and decided to proceed anyway. Moats asserts such a conclusion would have been an error. I agree Moat's interpretation is a fair reading of Judge Burke's analysis. But another fair – and more likely – reading would be that Judge Burke implicitly recognized Moats was "without counsel" and concluded the other two prongs of the heightened-duty test were not met because Moats was aware of his right to representation and decided to proceed without counsel, even though he was given the opportunity to postpone the hearing. In any case, because Moats objects to Judge Burke's conclusion with respect to the other two prongs as well, I will discuss each prong of the heightened duty test.

The first prong of the heightened-duty test is met so long as the claimant is "without counsel," even if the claimant is without counsel because he waived his right to counsel. *See. e.g., Clayton v. Colvin*, No. 1:15CV1407, 2016 WL 4729193, at *7-*8 (N. D. Ohio Sept. 12, 2016); *Baker v. Comm'r of Soc. Sec.*, No. 12-cv-14530, 2013 WL 6409955, at *6-*7 (E.D. Mich. Dec. 9, 2013).

3

Therefore, even though Moats waived his right to counsel, the first prong of the heightened-duty test is met.

The second and third prongs are not so clear cut. Instead, these prongs require a case-by-case determination of whether "the hearing transcript discloses [the claimant's] grasp of the proceedings and the adequacy of [his] case presentation to the ALJ." *Wilson*, 280 F. App'x at 459. Although Moats, "like nearly all Social Security claimants, was undoubtedly not well versed in hearing procedures," the heightened duty will apply only if "the transcript [ ] demonstrate[s] that his 'grasp of the proceedings' was so insufficient so as to require the ALJ to further develop the record." *Ferland v. Comm'r of Soc. Sec.*, No. 17-10368, 2018 WL 4102852, at *9 (E.D. Mich. July 31, 2018).

To prove he was incapable of effectively presenting his case and was unfamiliar with the hearing procedures, Moats cites his full-scale IQ score of 66 as well as his confusion about his medical history exhibited by his hearing testimony. (Doc. No. 19 at 5-6).

With a full-scale IQ score of 66, Moats is considered by the Social Security Administration to have "significantly subaverage general functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05(B)(1). Even so, the ALJ concluded Moats did not have an intellectual disorder because Moats had "no more than moderate limitation in understanding, remembering, or applying information, interacting with others, concentration, persistence or pace, and adapting or managing oneself." (Doc. No. 12 at 32).

Moats's documented intellectual limitation is relevant to his ability to understand the hearing procedures and effectively present his case, but it is not dispositive. *See, e.g., Depweg v. Comm'r of Soc. Sec.*, No. 14-11705, 2015 WL 5014361, at *8 (E.D. Mich. Aug. 24, 2015) (concluding no heightened duty was owed even though the unrepresented claimant's intelligence was below average). Instead the entire hearing transcript must be considered.

Moats contends his hearing testimony shows his intellectual limitation prevented him from effectively presenting his case. In support, Moats cites his testimony regarding his recent medical treatment, which he alleges shows he was confused about his case record.

At the beginning of the hearing Moats mistakenly testified that he had treated with an endocrinologist. (Doc. No. 12 at 51-52). But Moat's wife later corrected her husband's mistake, testifying that he had treated with a podiatrist and a dermatologist but not an endocrinologist. (*Id.* at 83-84, 94). While Moats's error with respect to the type of physician he treated with may be evidence of his confusion, the remainder of the hearing transcript shows otherwise.

Most importantly, Moats's ability to appropriately answer all of the ALJ's questions without requiring the ALJ to repeat or rephrase any question undercuts his current allegation of confusion. This questioning was not "superficial" but spanned twenty pages of the fifty-five-page hearing transcript. (*Id.* at 55-74). These twenty pages show Moats was able to effectively present his case by providing cogent testimony about his previous employment, current daily activities, impairments, and treatment.

Beyond this, the hearing transcript shows he had a sufficient "grasp of the proceedings" to effectively present his case. First, in the face of the ALJ's advice that "a representative [could] present [his] case in a way that [was] most favorable to [him]" and offer to postpone the hearing for Moats to obtain a representative, Moats affirmed he did not "need a lawyer" and could "do[ ] this [himself]." (Doc. No. 12 at 50). Second, Moats had the forethought to bring his wife as a witness. (*Id.* at 48, 51). And third, Moats prepared for the hearing by reviewing his case file and bringing additional medical records to supplement it. (*Id.* at 50-53).

Despite Moats's intellectual limitation and a single instance of confusion during the hearing, which was remedied by his wife's testimony, I conclude Moats was able to effectively present his case and "grasp the hearing procedures." *See Fletcher v. Comm'r of Soc. Sec.*, No. 1:19-cv-1038, 2020

5

WL 7692739, at *4-*5 (S.D. Ohio Dec. 28, 2020) (claimant "repeatedly confirmed her intent to proceed pro se and expressed her intention to present the testimony of a lay witness, her husband, on her behalf."); *Ferland*, 2018 WL 4102852, at *8-*9 (claimant "testified cogently in response to the ALJ's questions, and he had the forethought to bring a witness (his wife) to the hearing, who also offered cogent testimony"); *Depweg*, 2015 WL 5014361, at *8 (claimant understood and responded appropriately to the ALJ's questions and supplemented the record at the hearing with additional medical records). Therefore, the ALJ did not have a special, heightened duty to develop the record.

Even if the ALJ did have a heightened duty, the ALJ was not required to advise Moats to see an endocrinologist both for his health and social security claim, as Moats now argues. (Doc. No. 19 at 5-6). As stated in *Lashley*, "the administrative law judge must not become a partisan and assume the role of counsel." 708 F.2d at 1051. To require the ALJ to provide such medical advice would be to charge him with impermissibly acting as Moats's counsel. Therefore, such advise far exceeds even the heightened duty. *See, e.g., McKenzie v. Comm'r of Soc. Sec.*, No. 13-CV-11272, 2014 WL4793884, at *3 (E.D. Mich. Sept. 25, 2014); *Morgan v. Astrue*, No. 3:09-CV-262, 2010 WL 3723992, at *8 (E.D. Tenn. June 30, 2010).

**B.     Vocational Expert**

In his argument regarding the ALJ's alleged heightened duty, Moats also asserts the ALJ had a duty to cross-examine the vocational expert on his behalf. Specifically, he faults the ALJ for failing to question the vocational expert's methodology underlying his opinions concerning the number of jobs available in the national economy.

Because the ALJ did not have a heightened duty, he was not required to cross-examine the vocational expert. But this objection also touches upon whether the vocational expert's testimony is "substantial evidence" in support of the ALJ's conclusion that jobs exist in significant numbers in

6

the national economy that Moats could perform. For this argument, Moats relies heavily on *Biestek v. Berryhill*, 139 S.Ct. 1148 (2019).

In *Biestek*, the claimant urged the Court to adopt a categorical rule in which "the testimony of a vocational expert who … refuses a request for supporting data about job availability can never clear the substantial-evidence bar." 139 S.Ct. at 1154. The Court rejected the claimant's proposal and held "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Id.* at 1157. The Court explained its holding with the following hypothetical example:

> Assuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data. Take an example. Suppose an expert has top-of-the-line credentials, including professional qualifications and many years' experience; suppose, too, she has a history of giving sound testimony about job availability in similar cases (perhaps before the same ALJ). Now say that she testifies about the approximate number of various sedentary jobs an applicant for benefits could perform. She explains that she arrived at her figures by surveying a range of representative employers; amassing specific information about their labor needs and employment of people with disabilities; and extrapolating those findings to the national economy by means of a well-accepted methodology. She answers cogently and thoroughly all questions put to her by the ALJ and the applicant's lawyer. And nothing in the rest of the record conflicts with anything she says. But she never produces her survey data. Still, her testimony would be the kind of evidence—far "more than a mere scintilla"—that "a reasonable mind might accept as adequate to support" a finding about job availability. *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. Of course, the testimony would be even better—more reliable and probative—if she had produced supporting data; that would be a best practice for the SSA and its experts. And of course, a different (maybe less qualified) expert failing to produce such data might offer testimony that is so feeble, or contradicted, that it would fail to clear the substantial-evidence bar. The point is only … that expert testimony can sometimes surmount that bar absent underlying data.

*Id.* at 1156 (footnote omitted).

Here, William J. Kiger was the vocational expert. Kiger is certified by the American Board of Vocational Experts. (Doc. No. 12 at 339). According to Westlaw, Kiger has testified as a vocational expert in at least twenty-two other similar proceedings, beginning as early as 2007. *See, e.g., Piotter v. Astrue*, No. 2:08-cv-00649, 2009 WL 2382996 (S.D. Ohio July 29, 2009); *Trusty v. Comm'r of Soc. Sec.*, No. 19-12743, 2020 WL 6140459 (E.D. Mich. Sept. 30, 2020). Additionally, from 1979

through 2009, Kiger worked for the Ohio Rehabilitation Services, Bureau of Vocational Rehabilitation, "assist[ing] people with disabilities toward employment through evaluation, training, treatment and counseling." (Doc. No. 12 at 339).

Based upon the Dictionary of Occupational Titles and his own education and experience, Kiger concluded Moats could perform only sedentary, unskilled work because Moats could not wear closed-toe shoes. (*Id.* at 90-92). Kiger testified that examples of these jobs under the Dictionary of Occupational Titles included a general office clerk, an addresser, and a surveillance monitor.[1] (*Id.* at 90). Kiger also provided the number of jobs for each of these occupations nationally but did not explain the methodology underlying this testimony. (*Id.*). Even so, a "reasonable mind might accept" Kiger's education and decades of experience "as adequate to support" his job-numbers testimony. *See Consol. Edison Co.*, 305 U.S. at 229. Therefore, even though it would have been a better practice for Kiger to have explained his methodology, his testimony regarding job numbers may sufficiently serve as substantial evidence.

---

[1] Moats briefly objects to the use of the Dictionary of Occupational Titles ("DOT"), contending it is outdated and does not accurately portray the jobs available in the national economy. While it is true that the DOT has not been updated since 1991, the Sixth Circuit has not concluded using the DOT to be an error. Further, the Occupational Information Network (O*Net) has provided a list of "alternative titles," which seemingly translates outdated DOT language into more current lay person titles. *See* O*Net 25.2 Database, Occupation Titles: Alternative Titles, *available at* https://www.onetcenter.org/database.html#coll (last visited April 12, 2021). For example, "addresser" is an alternate title for "office and administrative support worker." Therefore, I do not find the ALJ and vocational expert's use of the DOT to be a reversible error.

## V. CONCLUSION

For the foregoing reasons, I adopt Judge Burke's recommendation to affirm the Commissioner's decision and overrule Moats's objections.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge